Brian E. Pastuszenski (*pro hac vice*)
*bpastuszenski@goodwinprocter.com*
Matthew G. Lindenbaum (*pro hac vice*)
*mlindenbaum@goodwinprocter.com*
Katherine G. McKenney (*pro hac vice*)
*kmckenney@goodwinprocter.com*
Timothy E. Bazzle (*pro hac vice*)
*tbazzle@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Exchange Place
Boston, MA 02109-2802
Tel.:  617-570-1000
Fax:  617-570-1231

Richard M. Wyner (*pro hac vice*)
*rwyner@goodwinprocter.com*
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001-4432
Tel.:  202-346-4000
Fax:  202-346-4444

Daniel J. Tyukody (SBN 123323)
*dtyukody@goodwinprocter.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.:  213-426-2500
Fax:  213-623-1673

*Attorneys for Countrywide Defendants*
*Countrywide Financial Corporation; Countrywide Securities Cor-*
*poration; Countrywide Home Loans, Inc.; CWABS, Inc. and*
*CWMBS, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN re COUNTRYWIDE FINAN-CIAL CORP. MORTGAGE-BACKED SECURITIES LITIGA-TION | Case No.  11-ML-02265-MRP (MANx)<br><br>**JOINT STIPULATION REGARDING DISCOVERY DISPUTE** |
| IKB INTERNATIONAL S.A. IN LIQUIDATION, et al.,<br><br>               Plaintiffs,<br>    v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>               Defendants. | Courtroom:  12<br>Judge: Hon. Mariana R. Pfaelzer<br><br>Case No.  12-CV-06151-MRP (MANx)<br>Hearing Date:  May 28, 2014<br><br>**Close of Fact Discovery**: July 25, 2014<br><br>**[DISCOVERY MATTER]** |

1

# **TABLE OF CONTENTS**

2   I.    COUNTRYWIDE DEFENDANTS' INTRODUCTORY STATEMENT .....1

3   II.   PLAINTIFFS' INTRODUCTORY STATEMENT .......................................2

4   III.  THE SPECIFIC INTERROGATORY AT ISSUE..........................................4

5   IV.  COUNTRYWIDE DEFENDANTS' POSITION ..........................................6

6   V.   PLAINTIFFS' POSITION ...............................................................................9

7         1.    IKB Has Provided a Complete Response to the Interrogatory .............9

8         2.    IKB Invested Through Third-Party Investment Managers that
9               Were Contractually Obligated to Review Offering Materials on
                IKB's Behalf Prior to Purchase.............................................................12

10        3.    Defendants' Motion is Premature in Light of the Substantial
11              Discovery that Remains to be Taken on the Subject of Reliance.......13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants Countrywide Financial Corp., Countrywide Securities Corp., Countrywide Home Loans, Inc., CWABS, Inc., and CWMBS, Inc. (collectively, the "Countrywide Defendants" or "Defendants") and Plaintiffs IKB International S.A. in Liquidation ("IKB SA" or "Plaintiff") and IKB Deutsche Industriebank AG ("IKB AG," and together with IKB SA, "IKB" or "Plaintiffs") respectfully submit this Joint Stipulation regarding the parties' discovery dispute over Plaintiffs' response to the Countrywide Defendants' Interrogatory No. 20.

## I.   COUNTRYWIDE DEFENDANTS' INTRODUCTORY STATEMENT

The issue presented here is identical to the issue that this Court recently decided in *American International Group, Inc. v. Countrywide Financial Corporation* ("*AIG*").  Just like AIG, IKB has not provided a substantive answer to the Countrywide Defendants' Interrogatory No. 20, which seeks information essentially identical to the information the Court ordered AIG to provide.[1]  Specifically, Interrogatory No. 20 asks IKB to identify each alleged misrepresentation upon which Plaintiffs base their claims, the individual(s) that read and relied on each alleged misrepresentation and the date and manner of such reliance.  Instead of answering the interrogatory, Plaintiffs merely provided a roster of undifferentiated individuals in their initial disclosures and in response to this interrogatory whom they state have "knowledge and/or documents regarding Plaintiff's investments in and sale of the Certificates."  Plaintiffs do not identify what (if any) statements these particular individuals read or what (if any) statements these individuals relied on.  Plaintiffs then refer the Defendants to an extensive compilation of alleged misstatements culled from various Offer-

---

[1] IKB SA and IKB AG responded separately to Interrogatory No. 20.  Plaintiffs allege that IKB SA, not IKB AG, purchased each of the Certificates, which presumably explains why only IKB SA responded to Interrogatory No. 20.  As IKB SA's is the only substantive (and nevertheless incomplete) answer to Interrogatory No. 20 provided by Plaintiffs, this joint stipulation focuses solely on IKB SA's deficient response.  The Countrywide Defendants reserve their right to seek to compel IKB AG to provide a substantive and complete response to Interrogatory No. 20 to the extent that discovery reveals that IKB AG or any of its present or former directors, trustees, governors, overseers, officers, employees, partners, parents, subsidiaries, predecessors, successors, affiliates, divisions, departments, funds, portfolios, series, bureaus, branch offices, agents, representatives, or anyone else acting on IKB AG's behalf was involved in the decision to purchase the Certificates.

1

LIBA/2063780.1

ing Documents that they identify as the alleged misrepresentations upon which they relied. Rather than identify which specific individual read and relied on which specific alleged misrepresentations, as the interrogatory requests, Plaintiffs direct the Countrywide Defendants to an undifferentiated jumble of alleged misrepresentations on one hand and superficially identified individuals on the other and tell the Countrywide Defendants to figure it out.

Because Plaintiffs cannot prevail on their fraud claims without putting forward such facts, Plaintiffs' continued refusal to respond fully to Interrogatory No. 20 consequently harms the Countrywide Defendants by denying them basic information to formulate their defenses. Troublingly, during the parties' April 10, 2014 meet and confer pursuant to Local Rule 37-2, Plaintiffs' counsel <u>refused to say whether they, in fact, knew</u> which IKB employees (if any) read and relied on which specific alleged misrepresentation. Plaintiffs, however, could not have brought their claims against the Countrywide Defendants in good faith without this specific information. It is no surprise, then, that in considering this same issue in *AIG*, the Court ordered that AIG provide a response to an Interrogatory seeking information identical to the information the Countrywide Defendants seek here. *See Am. Int'l Grp., Inc. v. Countrywide Fin. Corp.*, No. 2:11-CV-10549-MRP(MANx), ECF No. 428, at 2 (Dec. 23, 2013) (Lindenbaum Decl. Ex. 1) (the "*AIG* Order"). The Court should order Plaintiffs to either do the same here, or dismiss their claims against the Countrywide Defendants.

## II.   <u>PLAINTIFFS' INTRODUCTORY STATEMENT</u>

The motion before the Court is vastly and materially different from the interrogatory dispute that Defendants had with AIG.

*First*, unlike in *AIG*, here, Plaintiffs **have** provided a complete response to the interrogatory in question. AIG objected entirely to the interrogatory and provided no information at all, and therefore the Court's order in that case is hardly surprising. Here, on the other hand, IKB SA has identified (a) current and former employees (identified by name), as well as the third-party investment managers, that reviewed

and relied on the Countrywide offering materials in question, (b) the approximate dates that the offering documents were reviewed, and (c) detailed quotations of mis-representations relied upon, as specified in the Complaint.  The fact that Countrywide has abandoned substantially all of the arguments it raised in *AIG* (despite having been successful there), and instead invented entirely new theories as to why IKB SA's re-sponses are supposedly inadequate, makes the significant distinctions between the two cases readily apparent.

*Second*, unlike in *AIG*, every Certificate at issue here was purchased through a third-party investment manager, either BlackRock or Standish Mellon.  Those en-gagements have long since been terminated, and Plaintiffs are not in possession of the investment managers' documents, except to the extent they have been recently pro-duced pursuant to subpoenas issued by Plaintiffs, all of which has been provided to Defendants.  Document production in response to those subpoenas remains on-going as of this filing.

*Third*, Defendants' motion is premature, as substantial discovery remains to be completed on the issue of reliance.  As of this filing, Defendants have not yet even no-ticed a single deposition of any of Plaintiffs' current or former employees.  Plaintiffs have issued deposition subpoenas to both BlackRock and Standish Mellon, however, those depositions have not been scheduled yet.  Defendants will have a full and fair opportunity to question the witnesses about the granular details they seek at those depositions.[2]  Moreover, Defendants just served their own document requests on BlackRock on April 24, 2014, and on Standish Mellon on May 1, 2014.  No docu-ments have yet been produced in response to either subpoena so far as Plaintiffs are aware.  With almost all of the relevant discovery on the issue of IKB SA's reliance still outstanding, Defendants' motion is clearly premature.

---

[2] Defendants' unprincipled attack that Plaintiffs "could not have brought their claims against the Countrywide Defendants in good faith" without knowing details such as the exact date that a misrepresentation was relied upon more than six years ago lacks any legal or rational basis, and, in any event, is not at issue in this discovery motion.

1   For these reasons, and as further explained below, Defendants' motion to com-
2   pel should be denied.

3   **III.   THE SPECIFIC INTERROGATORY AT ISSUE**

4   **INTERROGATORY NO. 20** (Defendants' First Set of Interrogatories to Plaintiffs
5   (served Oct. 9, 2013)):

6   IDENTIFY every statement that YOU contend was false or misleading, and on
7   which YOU contend YOU or YOUR ADVISORS relied in connection with deciding
8   to purchase any of the CERTIFICATES, by providing the following information:

9       a.    In the case of a written statement, (i) the Bates number of the DOC-
10             UMENT containing the statement, or if there is no Bates number, the
11             title of the DOCUMENT or other information to enable ready identi-
12             fication of the DOCUMENT; (ii) the exact quoted language of the
13             statement; (iii) all PERSONS who provided the statement to YOU or
14             to YOUR ADVISORS, and the manner in which, and the date(s) on
15             which, each such PERSON provided it; (iv) all PERSONS who read
16             the statement, and the date(s) on which each such PERSON read it;
17             (v) all PERSONS who relied on the statement, and the dates on which,
18             and the manner(s) in which, each such PERSON relied; and (vi) all
19             reasons YOU contend the statement was false or misleading; and

20      b.    In the case of a non-written statement, (i) the manner in which the
21             statement was communicated (*e.g.*, telephone call, face-to-face meet-
22             ing); (ii) the exact quoted language of the statement, or if exact quota-
23             tion is not possible, the most detailed recitation or summary of the
24             statement possible; (iii) all PERSONS who communicated the state-
25             ment to YOU or YOUR ADVISORS, and the date(s) on which each
26             such PERSON communicated it; (iv) all PERSONS who directly or
27             indirectly heard, received or otherwise became aware of the statement,
28             and the date(s) on which each such PERSON heard, received, or be-

4

came aware of it; (v) all PERSONS who relied on the statement, and the date(s) on which, and the manner(s) in which, each such PERSON relied; and (vi) all reasons YOU contend the statement was false or misleading.

## IKB SA'S RESPONSE TO INTERROGATORY NO. 20[3]

Plaintiff incorporates by reference its General Objections. Plaintiff objects to this Interrogatory as vague, overly broad, and ambiguous. Plaintiff further objects to this Interrogatory to the extent that it is redundant and duplicative of other Interrogatories and requests in the First RFP.

Subject to and without waiving the foregoing objections, Plaintiff responds by directing Defendants to the Complaint and Appendix A attached thereto, which is also attached hereto. Together the Complaint and Appendix A describe every misrepresentation alleged by Plaintiffs. Those misrepresentations are derived solely from the offering documents that were publicly filed by Defendants with the Securities and Exchange Commission, and used by the Defendants to market the Certificates to Plaintiff IKB SA. Each misrepresentation quoted in the Complaint and Appendix A cites to the specific Prospectus Supplement, and the page at which the misrepresentation occurs. Those misrepresentations were likewise made in Preliminary Prospectus Supplements, as well as in other Offering Documents, which predated the Prospectus Supplements. Moreover, Plaintiff responds that each misrepresentation was reviewed and relied upon at or about the time of the trade and/or settlement date for each Certificate, the former of which is specifically listed in Table 1 of the Complaint for each Certificate. Third party discovery from Plaintiffs' investment managers, Standish Mellon and Black Rock, will provide further detail in relation to this interrogatory.

---

[3] As reflected in Plaintiff IKB S.A.'s Supplemental Verified Responses and Objections to Defendants' Interrogatory No. 20 (served Apr. 4, 2014), which supplemented and superseded Plaintiff IKB S.A.'s Verified Responses and Objections to Defendants' First Set of Interrogatories (served Nov. 11, 2013) (Rhodes Decl. Ex. A) and a supplemental response provided in a letter from Mark S. Arisohn to Richard M. Wyner (dated Jan. 17, 2014) (Lindenbaum Decl. Ex. 2).

Plaintiff further responds by directing Defendants to the Initial Disclosures submitted by Plaintiffs and by referring Defendants to Plaintiff's response to Interrogatory No. 5, which lists individuals who reviewed certain materials in connection with the purchase of the Certificates, including, but not limited to, the offering materials for each of the Certificates.  Specifically, Blackrock and Standish Mellon acted as Plaintiff IKB SA's agents in reviewing and relying on the misrepresentations in the offering materials in connection with the purchase of the Certificates, as did IKB SA employees, including Wolfgang Bathis, Thomas Blum and Wolfgang Gueth.

Plaintiff further responds by directing Defendants to (a) documents already produced and yet to be produced in response to the First RFP, (b) documents already produced and yet to be produced by third-parties, including Blackrock and Standish Mellon, and (c) the deposition testimony of current and former employees of Plaintiff IKB SA, as well as that of third parties, that will be taken in this action.  Plaintiff specifically reserves the right to supplement this response with additional information obtained during fact discovery.

## IV.	COUNTRYWIDE DEFENDANTS' POSITION

Plaintiffs have refused to provide specific information regarding the alleged misrepresentations that form the basis of their Complaint, instead hanging their hat on the assertion that their deficient response is still "far more detailed than that provided by AIG in response to the analogous interrogatory in their case" because they identified "specifically-named" employees that relied on the alleged misrepresentations. Directing the Countrywide Defendants to an undifferentiated list of "specifically-named" employees does not answer Interrogatory No. 20 because it does not clearly state *which* of the these "specifically-named" employees relied on *each* alleged misrepresentation.  Nor does directing the Countrywide Defendants to Plaintiffs' document productions or third-party productions from BlackRock and Standish Mellon without identifying precisely where in these productions the answers sought by the interrogatory can be found.  This response falls far short of what the Countrywide De-

6

fendants clearly state they are seeking in Interrogatory No. 20, as well as what Plaintiffs are required to disclose under bedrock rules of discovery. *See* Fed. R. Civ. P. 33(d)(1) ("If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . the responding party may answer by: (1) *specifying* the records that must be reviewed, in *sufficient detail* to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." (emphasis added)).[4]

Indeed, the Countrywide Defendants' Interrogatory No. 20 seeks the very same information this Court ordered AIG to produce in the *AIG* Order. This information, about who specifically read and relied on the Countrywide Defendants' alleged misrepresentations, goes directly to the core of Plaintiffs' fraud claims—Plaintiffs simply cannot put forward a cognizable fraud claim without articulating specific facts about *what* misrepresentations underlie their claims and *who* from Plaintiffs relied on those misrepresentations.

Although Plaintiff's April 4th Supplemental Response states that "IKB SA employees, including Wolfgang Bathis, Thomas Blum and Wolfgang Gueth" "review[ed] and rel[ied] on the misrepresentations in the offering materials in connection with the purchase of the Certificates," this response does not identify which particular misrepresentation these individuals read and relied on—*i.e.*, did Messrs. Bathis and Blum read and rely on alleged misrepresentations about Countrywide's compliance with underwriting guidelines (and did they do so for each of the 28 challenged mortgage-backed securities) while Mr. Gueth read and relied on alleged misrepresentations

---

[4] *See, e.g., Rainbow Pioneer No. 44-18-04A v. Haw.-Nev. Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983) (response did not comply with Fed. R. Civ. P. 33 when it "merely recited that the answers could be found in partnership books of accounts, banking accounts, records, computer printouts, ledgers and other documents" (internal quotations omitted)); *Becker v. Wells Fargo Bank, NA., Inc.*, No. 2:10-cv-02799 TLN KJN PS, 2013 WL 5406894, at *6 (E.D. Cal. Sept. 25, 2013) (compelling responding party to supplement interrogatory response to identify specific documents in response to an interrogatory requesting "the identification of documents and information" and to identify which produced documents are responsive to the interrogatory); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 322-23 (C.D. Cal. 2004) (same).

about Countrywide's review of loan purchases from correspondent lenders?  Or was it the other way around?  The response also fails to make it clear, one way or the other, whether any other IKB employees read and relied on any particular alleged misrepresentation.  If Plaintiffs are unable or unwilling to provide a complete answer to this Interrogatory—as is suggested by their refusal to say during the parties' April 10th meet and confer whether they in fact knew which individuals read and relied on which specific alleged misrepresentations—then they cannot continue to litigate this claim against the Countrywide Defendants.

Plaintiffs contend that their Complaint sufficiently identifies the misrepresentations upon which they base their claims and the individuals that read and relied on each alleged misrepresentation.  This Court, however, has already rejected these exact arguments.  AIG argued that its Third Amended Complaint "expressly defines the offering materials pursuant to which the securitizations were purchased," "clearly identifies the four categories of misrepresentations and omissions that AIG alleges are contained in (or omitted from) the offering materials," and "identifies the purchase date for each of the securitizations at issue."  *See* Joint Stipulation Regarding AIG's Disc. Resps. at 23-25, *Am. Int'l Grp., Inc. v. Countrywide Fin. Corp.*, No. 2:11-CV-10549-MRP (MANx), ECF No. 399, (C.D. Cal. Nov. 15, 2013) (Lindenbaum Decl. Ex. 3 at 4-6).  AIG further asserted that the "list of proposed AIG Investments custodians that includes, among other things, the names and positions of AIG Investments portfolio managers, traders, and credit research analysts" sufficiently identified the "personnel [that] routinely reviewed and relied upon the portions of the offering materials that contained the false and misleading statements when deciding whether to invest in the RMBS."  *Id.* at 24.  This Court, however, rejected these arguments and ordered that AIG "[w]ithin 14 days of the date of this Order, provide a response to Defendant's Interrogatory No. 1(a) subparts (i), (ii), (iv), (v) and (vi).  The response shall specify the requested information with respect to each alleged misrepresentation on which AIG bases its claims."  *AIG* Order at 2.

By refusing to disclose who at IKB SA relied on the alleged misrepresentations in the Offering Documents, Plaintiffs conceal from Defendants how IKB SA decided to invest in the Certificates and its knowledge of the risks associated with investing as heavily as IKB SA did in mortgage-backed securities backed by risky subprime loans. To the extent that the individuals that relied on the alleged misrepresentations executed these trades with knowledge of the risks they were undertaking, this would directly undercut Plaintiffs' claim of reasonable reliance. To the extent that <u>no one</u> at IKB SA read and reasonably relied upon specific alleged material misrepresentations in the Offering Documents, IKB SA cannot maintain its claims against the Countrywide Defendants. Plaintiffs should not be permitted to engage in such gamesmanship. Therefore, this Court should apply the *AIG* Order to this case and order Plaintiffs to either identify who *specifically* read and relied on the documents it has identified, *what* statements they relied upon, *when* that alleged reliance occurred, and in *what manner* they relied on the statements, or dismiss their claims.

## D.   **PLAINTIFFS' POSITION**

### 1.   **IKB Has Provided a Complete Response to the Interrogatory**

Unlike Defendants' motion in the AIG case, where AIG had provided no response to Defendants' reliance interrogatory whatsoever,[5] IKB SA has provided a detailed response to the interrogatory, with specific and meaningful information. Even though IKB SA's initial response was sufficient, Plaintiff has already supplemented its initial response twice in a good faith effort to avoid this premature and unnecessary motion that seeks information which is the subject of ongoing discovery, including from third party investment managers and former IKB employees that are beyond IKB's control. Specifically, Plaintiff has identified detailed quotations of misrepresentations relied upon for every Certificate at issue, supplied the names and positions

---

[5] Specifically, AIG's response, in its entirety, was "Plaintiff objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, duplicative of Defendants' requests for production, and better suited for document and deposition discovery."

of all current and former employees of IKB S.A., named the third-party investment managers that primarily reviewed and relied on the Countrywide offering materials in question, and provided the dates on or about which the offering documents were reviewed.

Defendants claim that AIG was in the same position and that the Court "already rejected these exact arguments" in *AIG*.  To understand why Defendants' claim is entirely false, one only need look at the Countrywide Defendants' own arguments in the *AIG* motion.  AIG's position was that its complaint *obviated the need for any response* and therefore provided none, whereas IKB has in fact responded with the information requested by the Interrogatory.  Defendants themselves argued during the AIG motion that "if the exhibits to the Complaint provided that information, then it would be easy for AIG to respond to that portion of the interrogatory—it could simply copy from the exhibits."[6] That is precisely what Plaintiff has done here by incorporating those exhibits by reference into its Interrogatory Response.

Moreover, in *AIG,* Countrywide's primary concern in this regard was with respect to AIG's reliance on unspecified "presentations" and "other written materials" that Countrywide claimed to be unable to identify.  CW-AIG Supp. Mem. at 2 (Rhodes Decl. Ex. B).  No such issue exists here, as IKB has not pled reliance on any "presentations" or "other written materials," and, as stated in the Interrogatory Response, every statement Plaintiffs relied upon was filed with the Securities and Exchange Commission by Defendants.

IKB SA has identified each of the current and former IKB employees involved in reviewing the offering materials by name in its Interrogatory Response for each and every Certificate.  Again, Defendants' own arguments show the clear difference between the *AIG* case and this one.  According to Countrywide, "AIG ha[d] not previ-

---

[6] *See* Countrywide Defendants' Supplemental Memorandum Regarding AIG's Discovery Responses  in *American International Group, Inc. v. Countrywide Financial Corp., et al.*, No. 2:11-CV-10549-MRP(MANx), Dkt. No. 408 (C.D. Cal. Dec. 2, 2013) ("CW-AIG Supp. Mem."), at 2, attached as Rhodes Decl. Ex. B.

ously limited the potential universe of persons who it might claim read the documents" prior to counsel for AIG's argument in the Joint Stipulation itself, and Defendants therefore argued that this was not a sufficiently "binding statement."  CW-AIG Supp. Mem. at 3 (Rhodes Decl. Ex. B).  Here, that is obviously not the case, because IKB's Interogatory Response itself specifically identifies the universe of known persons that relied on Countrywide's misrepresentations.

Moreover, as to the 21 document custodians that, according to Countrywide, AIG "informally identified", Defendants only concern was the length of time that it would take to depose each of those deponents about each of the 159 securitizations at issue in that case.  Here, by contrast, the "universe of persons" consists of only 3 IKB SA employees and 2 investment managers, all of whom have either already been subpoenaed for deposition by Plaintiffs or have been identified by Defendants as individuals they intend to depose regardless of Plaintiffs' Interrogatory Response.  Also, IKB's case only has 19 securitizations at issue, easily capable of being covered in the course of a normal deposition.

Effectively conceding that IKB SA's interrogatory response is in fact different from AIG's response, Countrywide has jettisoned the arguments it made in *AIG* and now complains instead that although Plaintiff has in fact identified the universe of persons that relied on the statements at issue, Plaintiff has not specified which specific individual reviewed which misrepresentation on which date.  In doing so, however, Defendants have invented a standard of proof that does not exist.  Defendants cite no authority supporting their incorrect notion that evidence that Plaintiffs' (or their agents') regular and customary practice of reliance on specified types of representations during the relevant time period in connection with making investment decisions would be insufficient to raise a triable issue of fact concerning Plaintiffs' reliance on those statements with respect to the Certificates.  To the contrary, the Federal Rules of Evidence expressly provide that "Evidence of … an organization's routine practice may be admitted to prove that on a particular occasion the … organization acted in ac-

cordance with the habit or routine practice." Fed. R. of Evid. 406.[7]  Moreover, the kinds of granular details that Defendants' seek remains a significant topic of substantial on-going discovery, as discussed below.

> ### 2.   IKB Invested Through Third-Party Investment Managers that Were Contractually Obligated to Review Offering Materials <u>on IKB's Behalf Prior to Purchase</u>

Yet another crucial distinction between AIG and IKB that is ignored by Countrywide, is that unlike AIG, despite the involvement of IKB SA employees in the investment process, every one of the Certificates at issue here was ultimately purchased through an investment manager.  As detailed in the Complaint, the investment managers had contractual and fiduciary obligations to review the offering documents prior to purchasing any securities on IKB SA's behalf.  Plaintiffs have identified those investment managers in the Interrogatory Response, and named specific individuals employed by each investment manager that were responsible for IKB SA's investments in their initial disclosures.[8]  Further, IKB has already subpoenaed both investment managers for documents and testimony, and Countrywide has only just recently sent its own subpoenas to the investment managers; however, as further discussed below, that discovery remains ongoing.

Again, Defendants themselves have recognized the importance of this distinction, stressing in the AIG motion that the detailed information they sought was "clearly within AIG's possession."  CW-AIG Supp. Mem. at 3 (Rhodes Decl. Ex. B).  That is not the case here.

---

[7] *See also Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2010 WL 809579, at *6 (N.D. Cal. Mar. 5, 2010) (finding sufficient evidence to survive a summary judgment motion with respect to reliance where "***Plaintiff produced … evidence to demonstrate that he did rely on a misrepresentation*** … [including] deposition testimony that his ***practice*** was to rely solely on the stated due date on his bills.") (emphasis added); *S.E.C. v. Lyon*, 605 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (finding that testimony concerning routine business practice was presumptively admissible and part of "strong" evidence creating a triable issue of fact in a securities fraud case).

[8] *See* Plaintiffs' Initial Disclosures, Rhodes Decl. Ex. C.

### 3.   Defendants' Motion is Premature in Light of the Substantial Discovery that Remains to be Taken on the Subject of Reliance

Not a single witness has yet been deposed concerning reliance on the offering documents, and Defendants have not yet even noticed any Plaintiff depositions, while depositions of BlackRock and Standish Mellon pursuant to Plaintiffs' subpoenas have yet to be scheduled.  Moreover, both Plaintiffs and Defendants have issued document subpoenas to BlackRock and Standish Mellon encompassing the subject of reliance, and document production in response to those subpoenas is still on-going.  Therefore, to the extent any further supplemental response is required, it is clearly premature at this stage.

Many courts have recognized that interrogatories "that ask a plaintiff, or either party for that matter, to lay out its entire case, before much if any substantive discovery has taken place, ask too much."  *See Sandisk Corp. v. Zurich Am. Ins. Co.*, No. C 12 -6081, 2013 WL 4875526, at *2 (N.D. Cal. Sept. 12, 2013); *see also Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09-cv-2319, 2010 WL 2011526, at *1 (S.D. Cal. May 19, 2010) ("Several courts have found contention interrogatories served toward the beginning of a litigation to be of questionable value to the goal of efficiently advancing the litigation.") (internal quotations and citations omitted).  That is precisely the case here.

Finally, Defendants' unsupported argument that Plaintiffs "cannot continue to litigate [their] claim against the Countrywide Defendants" without establishing--before a single relevant witness has been deposed--which specific individual reviewed which statement on what date, is categorically wrong.  Obviously, Plaintiffs ultimately bear the burden of proof in this case.  Plaintiffs will have to proffer evidence that IKB SA relied on each of the misrepresentations supporting their claims otherwise those claims will not survive.  Despite Defendants' desire to skip the discovery process and move straight to summary judgment, that is not how the process works, and accordingly, Defendants' motion should be denied.

13

1

2                                      * * * * * * * *

3                        Respectfully submitted

4                        */s/ Brian E. Pastuszenski*
                         Brian E. Pastuszenski (*pro hac vice*)
5                        *bpastuszenski@goodwinprocter.com*
                         Matthew G. Lindenbaum (*pro hac vice*)
6                        *mlindenbaum@goodwinprocter.com*
                         Katherine G. McKenney (*pro hac vice*)
7                        *kmckenney@goodwinprocter.com*
                         Timothy E. Bazzle (*pro hac vice*)
8                        *tbazzle@goodwinprocter.com*
                         **GOODWIN PROCTER LLP**
9                        53 State Street
                         Boston, Massachusetts  02109
10                       Telephone:   617-570-1000
                         Facsimile:   617-523-1231

11                       Richard M. Wyner (*pro hac vice*)
                         *rwyner@goodwinprocter.com*
12                       **GOODWIN PROCTER LLP**
                         901 New York Avenue, NW
13                       Washington, DC 20001
                         Telephone:   202-346-4000
14                       Facsimile:   202-346-4444

15                       Daniel J. Tyukody (SBN 123323)
                         *dtyukody@goodwinprocter.com*
16                       **GOODWIN PROCTER LLP**
                         601 S. Figueroa Street, 41st Floor
17                       Los Angeles, CA 90017
                         Tel.:   213-426-2500
18                       Fax:   213-623-1673
                         *Attorneys for Countrywide Defendants*
19
                         *Countrywide Financial Corporation; Countrywide*
20                       *Securities Corporation; Countrywide Home Loans,*
                         *Inc.; CWABS, Inc. and CWMBS, Inc.*
21

22                       */s/  Mark I. Labaton*
                         Mark I. Labaton (SBN 159555)
23                       *mlabaton@motleyrice.com*
                         Robert Zabb (SBN 114405)
24                       *rzabb@motleyrice.com*
                         MOTLEY RICE LLP
25                       1801 Century Park East, Suite 475
                         Los Angeles, CA  90067
26                       Tel: (310) 552-7992
                         Fax: (310) 552-8054
27

28

                                         14

Joel H. Bernstein
*jbernstein@labaton.com*
Mark S. Arisohn
*marisohn@labaton.com*
Martis Alex
*malex@labaton.com*
LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Attorneys for Plaintiffs IKB International S.A. in Liquidation and IKB Deutsche Industriebank AG*